UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOHN FINNIGAN, individually and on behalf of       Civil Action No.
all others similarly situated,

                        Plaintiff,

    -against-

METROPOLITAN TRANSPORTATION
AUTHORITY and NEW YORK CITY
TRANSIT AUTHORITY,

                    Defendants.
-----------------------------------------------------------------X

## COLLECTIVE ACTION COMPLAINT

Plaintiff, JOHN FINNIGAN, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), as and for his Collective Action Complaint against Defendants, METROPOLITAN TRANSPORTATION AUTHORITY and NEW YORK CITY TRANSIT AUTHORITY (hereinafter, "Defendants"), respectfully alleges as follows:

## JURISDICTION AND VENUE

1.    Plaintiff brings this action under the Fair Labor Standards Act (hereinafter the "FLSA"), 29 U.S.C. §§ 201 *et seq.* to recover unpaid overtime compensation and for other relief. This action is brought as a collective action pursuant to 29 U.S.C. §216(b).

2.    Jurisdiction over Plaintiff's FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

3.    Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

1

## PARTIES

4.      Plaintiff has been employed by Defendants as a subway train operator from on or about June 1, 2003 until the present. For the past 10 years, Plaintiff has been assigned to the Main Street Terminal in Flushing, New York and operates the "7" train in Queens and Manhattan.

5.      Upon information and belief, Defendant Metropolitan Transportation Authority (hereinafter, "MTA") is a public benefit corporation, and according to the New York State Department of State, Division of Corporations, Defendant MTA is a domestic government entity duly organized and existing under and by virtue of the laws of the State of New York.

6.      Upon information and belief, Defendant New York City Transit Authority (hereinafter, "NYCTA") is a public benefit corporation, and according to the New York State Department of State, Division of Corporations, Defendant NYCTA is a domestic government entity duly organized and existing under and by virtue of the laws of the State of New York.

7.      Upon information and belief, Defendants MTA and NYCTA maintain their headquarters at 2 Broadway, New York, New York 10004.

8.      According to Defendant MTA's website, the MTA is North America's largest transportation network, serving a population of 15.3 million people across a 5,000-square-mile travel area surrounding New York City through Long Island, southeastern New York State, and Connecticut.

9.      According to the MTA's website, Defendant NYCTA is an operating agency of the MTA.

10.     According to the MTA's website, Defendants MTA and NYCTA operate twenty-seven (27) subway lines, six-thousand four-hundred thirty-five (6,435) subway cars, and four-

hundred seventy-two (472) subway stations, and transport an estimated 2.355 billion passengers annually throughout Manhattan, Brooklyn, Queens, and the Bronx.

11.    Upon information and belief, Defendants jointly employed Plaintiff and all other similarly situated employees as subway train operators at all times relevant to this action. Each Defendant had and continues to have substantial control over Plaintiff and all other similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

12.    Upon information and belief, Defendants were and continue to be part of a single integrated enterprise that jointly employed Plaintiff and all other similarly situated employees.

13.    Upon information and belief, Defendants' operations were and continue to be interrelated and unified.

14.    Upon information and belief, at all relevant times, Defendants MTA and NYCTA have shared common management and have been centrally controlled.

15.    Upon information and belief, at all relevant times, Defendants MTA and NYCTA maintained control, oversight, and direction over Plaintiff and all other similarly situated employees, including timekeeping, payroll, and other employment practices applied to them.

16.    Defendants MTA and NYCTA are covered employers within the meaning of the FLSA, and, at all relevant times, employed and/or jointly employed Plaintiff and all other similarly situated employees.

## **FACTS**

17.    At all times relevant to this action, Plaintiff was employed as a subway train operator for the benefit of and at the direction of Defendants.

18.     From on or about January 25, 2016 until the present (hereinafter, the "relevant period of his employment"), Plaintiff's primary duty was to operate the "7" train between the Flushing - Main St. subway station and the 34 St. – Hudson Yard subway station.

19.     During this time, Defendants paid Plaintiff an hourly rate of pay.

20.     During this time, Defendants paid Plaintiff via direct deposit on a bi-weekly basis.

21.     During this time, Plaintiff worked Monday through Friday.

22.     During this time, Plaintiff reported to the Main Street Terminal at the beginning of each shift.

23.     During this time, Plaintiff's shifts began at or about 6:32 a.m. and he typically departed the Flushing - Main St. subway station at 6:47 a.m. At times, if another subway train was delayed, Plaintiff would depart earlier than scheduled to cover the route.

24.     During this time, Plaintiff was scheduled for and generally received a lunch break from about 11:41 a.m. to 12:37 p.m. At times, if another subway train was delayed, Plaintiff would end his lunch break early to cover the route.

25.     During this time, Defendants considered Plaintiff's shift to be over at 4:06 p.m. when his train was scheduled to arrive at the final stop of his route, regardless of what time the train actually arrived.

26.     During this time, Defendants only paid Plaintiff for the hours worked between 6:32 a.m. and 4:06 p.m.

27.     Subway trains are considered to have arrived when the train passes through a "switch" leading up to the subway platform.

28.     However, it takes three to four (3 - 4) minutes from the time a subway train passes the "switch" to the time it comes to a complete stop at the subway platform. Once Plaintiff brings

4

the train to a complete stop, it is his responsibility to (1) "dump the train," meaning to open the doors so that the passengers can disembark, (2) reset all of the train controls so that the train can operate in the reverse direction for the next, oncoming operator, (3) secure the train's operating cabin, and (4) report to the main office. These additional tasks take seven to eleven (7 – 11) minutes to complete each shift.

29.     In total, Plaintiff works an additional ten to fifteen (10 – 15) minutes of compensable work-time each shift for which he was not paid.

30.     During this time, Plaintiff was paid for about forty-three (43) hours of work-time each week for his scheduled time on shift, including overtime at a rate of one and one-half times his regular rate of pay for those hours scheduled in excess of forty (40).

31.     During this time, Defendant failed to compensate Plaintiff for this work at a rate of one and one-half times his regular rate of pay even though Plaintiff had already worked in excess of forty (40) hours a week.

32.     Upon information and belief, Defendants maintain extensive time records detailing when every subway train arrives at every subway station throughout New York City. As such, Defendants are in possession of records that indicate the precise times that their subway trains pass the "switch" at the end of their train operators' daily shifts.

33.     Defendants require Plaintiff, and their subway train operators, to sign in at the beginning of their shifts.

34.     Defendants do not require Plaintiff, or any of their subway train operators, to punch out, clock out, or sign out at the end of their shifts.

35.     Defendants do not maintain accurate time records of the actual time Plaintiff, or any of their subway train operators, worked each shift.

36.     Defendants have constructive and/or actual knowledge that Plaintiff and the other subway train operators were working, and continue to work, these additional minutes every shift.

37.     Defendants maintain a time keeping system known as "Cronos" throughout the NYC subway network which would allow subway train operators to clock in and out of their daily shifts; however, upon information and belief, Defendants do not allow subway train operators to use the Chronos system because the additional ten to fifteen minutes of work performed by train operators at the end of their shifts would cost them a significant amount in overtime compensation.

38.     Instead, Defendants have made it exceptionally difficult for their subway train operators to report this time worked, and when it is reported, Defendants' supervisors routinely refuse to process the subway train operators' requests for overtime payment.

39.     During the course of Plaintiff's employment, Defendants have employed thousands of other subway train operators.

40.     Defendants subjected, and continue to subject, all of the train operators to the same illegal practices and policies as Plaintiff herein.

41.     During his employment, Plaintiff and the other train operators were not exempt from the overtime provisions of the FLSA.

42.     Defendants managed Plaintiff and the other train operators' employment, including the amount of overtime worked.

43.     Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies.

44.     Defendants were aware of Plaintiff and the other train operators' work hours but failed to pay them the full amount of wages to which they were entitled for this work time under the law.

45.    Defendants' failures to pay proper wages in a timely manner were made and continue to be made without good faith, willfully, and with a reckless disregard for Plaintiff and other train operators' rights, and Plaintiff and other train operators have been damaged by such failures.

## GENERAL ALLEGATIONS

46.    Plaintiff, individually and on behalf of all similarly situated current and former train operators of Defendants, including its subsidiaries and affiliated companies, brings this action as a collective action under the FLSA to recover, *inter alia*, unpaid overtime compensation owed to Plaintiff and all other similarly situated employees.

47.    Defendants' failure to pay Plaintiff and all other similarly situated employees overtime compensation for the unpaid time at the end of their daily shifts has violated the FLSA.

48.    As a result of these unlawful practices, Plaintiff and the similarly situated employees suffered a loss of wages.

## COLLECTIVE ACTION ALLEGATIONS

49.    Plaintiff seeks to proceed as a collective action pursuant to 29 U.S.C. §216(b) on behalf of himself and the following class of persons:

> All subway train operators who worked for Defendants in New York City at any time from three (3) years prior to the filing of this action to the entry of judgment in this action who give their consent, in writing, to become party plaintiffs (hereinafter, the "FLSA Class").

50.    Plaintiff and other members of the FLSA Class are similarly situated inasmuch as, *inter alia*, they were required to work between ten and fifteen minutes of uncompensated work at the end of their daily shifts without being paid proper overtime compensation.

51.    Defendants have known that Plaintiff and the FLSA Class have performed work that has required overtime compensation. Nonetheless, Defendants have operated under a scheme

7

to deprive Plaintiff and the FLSA Class of overtime compensation by failing to properly compensate them for all time worked.

52.     Defendants' conduct, as alleged herein, has been willful and has caused significant damage to Plaintiff and the FLSA Class.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 *ET SEQ*.**
**<u>FAILURE TO COMPENSATE FOR OVERTIME</u>**

53.     Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

54.     The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

55.     Plaintiff and the FLSA Class was and is entitled to overtime pay as required by the FLSA because they were and continue to be employed by an enterprise engaged in commerce.

56.     Defendants were and are subject to the overtime pay requirements of the FLSA because each Defendant is an enterprise engaged in commerce.

57.     At all times relevant to this Complaint, Defendants had, and continue to have, employees, including Plaintiff and other train operators, operate machinery and equipment that has moved in interstate commerce.

58.     Upon information and belief, the gross annual volume of sales made or business done by each Defendant for the years 2018, 2017, and 2016 was not less than $500,000.00.

59.     At all times relevant to this action, Plaintiff and the FLSA Class was entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

60.     Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

61.     By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff and the FLSA Class overtime compensation as required by the FLSA.

62.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

63.     However, none of the Section 13 exemptions apply to Plaintiff or the FLSA Class because they have not met the requirements for coverage under the exemptions.

64.     Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA.

65.     Defendants have not acted in good faith with respect to the conduct alleged herein.

66.     As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by and through his attorneys, Neil H. Greenberg & Associates, P.C., demands judgment against Defendants, jointly and severally and in favor of Plaintiff and the FLSA Class, for a sum that will properly, adequately, and completely compensate Plaintiff and the FLSA Class for the nature, extent, and duration of the damages, costs of this action, and as follows:

A.    Declare and find that Defendants committed one or more of the following

acts:

1.    Violated provisions of the FLSA by failing to pay overtime compensation to Plaintiff and the FLSA Class;

2.    Willfully violated the provisions of the FLSA;

B.    Award compensatory damages, including all overtime compensation

owed, in an amount according to proof;

C.    Award liquidated damages under the FLSA;

D.    Award post-judgment interest at the applicable rate;

E.    Award all costs and attorney's fees incurred in prosecuting this action; and

F.    Provide such further relief as the Court deems just and equitable.

Dated:  Massapequa, New York
        January 25, 2019

_____
Neil H. Greenberg, Esq.
Keith E. Williams, Esq.
Neil H. Greenberg & Associates, P.C.
*Attorneys for the Plaintiff*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100
keith@nhglaw.com

## FAIR LABOR STANDARDS ACT CONSENT FORM

I, the undersigned, consent to be a party in **Finnigan, John v. MTA New York City Transit** in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Massapequa, New York
       March 27, 2018

John Finnigan