UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────────

№ 19-CV-00516 (PKC) (RER)

───────────────────────

JOHN FINNIGAN,

Plaintiff,

vs

METROPOLITAN TRANSPORTATION AUTHORITY AND

NEW YORK CITY TRANSIT AUTHORITY,

Defendants.

───────────────────────

**MEMORANDUM & ORDER**
March 26, 2020

───────────────────────

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff John Finnigan ("Plaintiff") brings this action against Defendants, Metropolitan Transportation Authority ("MTA") and the New York City Transit Authority ("NYCTA"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. (Dkt. No. 1 ("Compl.")). Plaintiff has moved pursuant to FLSA § 216(b) to conditionally certify a collective action and to distribute notice to putative members (Dkt. No. 35 ("Pl. Mot.")). Defendants oppose the motion. (Dkt. No. 36 "Def. Mem."). For the reasons set forth below, Plaintiff's application is granted in part; authorizing notice only to subway operators or former subway operators of the "7" train for a period of time dating back three years from the filing of Plaintiff's motion. The proposed notice should be amended as described *infra*.

1

## **BACKGROUND**

### I. Factual Allegations

Plaintiff began working for Defendants as a subway train operator in 2003. (Compl. ¶ 4). For the past ten years, he has worked as a subway train operator for the "7" train in Queens and Manhattan. (*Id.*). During the course of his employment Plaintiff is regularly scheduled to work shifts that begin and end at specific times. For example, Plaintiff currently works a shift scheduled to begin at 7:06 a.m. and end at 3:22 p.m. (Dkt. No. 35-6 ("Finnigan Decl.") ¶ 10). Plaintiff contends that the scheduled end time of his shifts represents the time that the train he is operating is scheduled to "clear" the platform at the last stop. (Finnigan Decl. ¶ 11). A train is said to have "cleared" the platform when it passes a switch at the beginning of the platform. (Compl. ¶ 27). Plaintiff alleges that he was paid only for the time up until the train was scheduled to clear the platform, even though it took several more minutes for the train to reach a complete stop, (Compl. ¶¶ 28–29), and trains sometimes did not run on schedule. (*See* Finnigan Decl. ¶ 11; Compl. ¶ 25). Additionally, Plaintiff claims he often undertook other tasks at the end of his shift such as (1) dumping, which refers to safely allowing all passengers to disembark; (2) testing the emergency brakes; (3) resetting all of the train controls so that the train could operate in the reverse direction for the next operator; (4) securing the operating cabin; and (5) reporting to the dispatch office. (Finnigan Decl. ¶ 16; Compl. ¶ 28). Plaintiff attests that completion of his duties normally amounts to an additional ten to fifteen minutes of uncompensated time (Finnigan Decl. ¶ 17; Compl. ¶ 29). Plaintiff states that when he works more than forty hours a week he is not paid for this additional work and he is not paid overtime compensation at a rate of one and one-half times his regular pay. (Finnigan Decl. ¶ 18; Compl. ¶ 31). Plaintiff alleges that although he is allowed to submit a claim form for this unpaid time, the claim form must be submitted to a supervisor for approval and supervisors regularly deny requests without explanation. (Finnigan Decl. ¶¶ 21–22; Compl. ¶ 38). These policies, Plaintiff contends, apply to all subway operators. (Finnigan Decl. ¶ 23; Compl. ¶ 40). Plaintiff has submitted corroboration of his claims from three other operators of the "7" train who all assert the same allegations with nearly identical language. (*See* Dkt. Nos. 35-7 "Beato Decl."; 35-8 "Michaels Decl."; 35-9 "Allred Decl.").

## II. Procedural History

This case began on January 25, 2019, when Plaintiff filed his complaint. (Compl.). Defendants filed their Answer on April 5, 2019, (Dkt. No. 11), and the case was subsequently referred to mediation. (Dkt. No. 12). The Court Ordered the case withdrawn from mediation on August 6, 2019. (ECF Order Withdrawing Case dated 8/6/2019). Plaintiff moved for conditional certification on October 9, 2019. (Pl. Mot.).

## DISCUSSION

### I. Motion for Conditional Class Certification

A. Legal Standard

Section 216(b) of the FLSA permits the court to consider an employee's claims on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). The process of determining whether to certify a collective action is a two-step inquiry. *Myers v. Herts Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010). First, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiff[] with respect to whether a FLSA violation has occurred." *Id.* at 555. This preliminary step requires plaintiffs to "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y.1997)). Because the purpose of this stage is simply to determine whether there are similarly situated plaintiffs who could opt-in, the standard of proof is "low." *See, e.g., id.* However, the modest factual showing cannot be satisfied by unsupported assertions. *Id.*

Following this preliminary determination, Defendants may make a motion for decertification of the class, typically after discovery is completed. *In Re Penthouse Executive Club* No. 10 Civ. 1145 (NRB) 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010). The Court will apply increased scrutiny during this later stage to determine whether the additional plaintiffs are actually similarly situated. *Id.*

3

B. <u>Analysis</u>

Plaintiff's submission satisfies his burden of a modest factual showing that he is similarly situated to other subway operators of the "7" line with respect to the alleged violations of the FLSA, namely lack of overtime pay. His submission includes his own declaration and three declarations from other subway operators of the "7" line; each attests that they were "only paid each day until the train was scheduled to 'clear' the platform, regardless of the time that the train actually arrived and I actually completed all of my duties." (Finnigan Decl. ¶¶ 10–11; *see* Beato Decl. ¶¶ 10–11; Michaels Decl. ¶¶ 10–13; Allred Decl. ¶ 10). Furthermore, they each state that when "work is performed during weeks in which I have worked in excess of forty hours, not only am I not paid any wage for this additional work, I am not paid overtime compensation at a rate of one and one-half times my regular rate of pay." (Finnigan Decl. ¶ 18; *see* Beato Decl. ¶ 18; Michaels Decl. ¶ 19; Allred Decl. ¶16). Additionally, when claims for overtime are submitted, "[s]upervisors routinely deny the request without any explanation." (Finnigan Decl. ¶ 22; *see* Beato Decl. ¶ 22; Michaels Decl. ¶ 23; Allred Decl. ¶ 20). Collectively, the evidence offered by Plaintiff sufficiently alleges that Defendants engaged in a common policy, which violated the law, and that Plaintiff is similarly situated to other operators of the "7" line.

Plaintiff's showing with respect to "all" subway operators obliges a different result. Plaintiff's declaration and the supporting declarations of the three other "7" line subway operators each claim that Defendants' policies apply to *all* subway operators. (Finnigan ¶ 23; Beato ¶ 23; Michaels ¶ 24; Allred ¶ 21). However, none of the declarants offer any additional support or explanation as to how they know that these policies are universally utilized. The declarations simply state that, "[t]he MTA and the NYCTA employ thousands of subway train operators throughout the City of New York who are all subject to this same policy." (*Id.*). Though the standard to certify a collective action is "low," unsupported assertions are not enough. *See Myers*, 624 F. 3d at 555. Plaintiff's submission contains no specific allegations regarding any line besides the "7" line. In fact, one declarant presents evidence to the contrary and acknowledges that he is automatically paid an extra fifteen minutes when he operates the Grand Central Shuttle to compensate for the time spent completing required duties after the train clears the platform. (Michaels Decl. ¶¶ 27–28). Therefore, Plaintiff has not shown that all subway operators are subject to a common policy and consequently his submission is insufficient to support certification of a city-wide class.

4

Accordingly, Plaintiff's motion to certify a collective action is granted only as to subway operators on the "7" line.

C. Defendants' Objections

Defendants make several arguments in opposition to Plaintiff's motion. First, they argue that Plaintiff has not made a "factual showing" of a common unlawful policy and therefore conditional certification is not appropriate. (Def. Mem. at 12). A review of the first case cited by Defendants on this point, *Myers*, reveals that the required "*modest* factual showing . . . remain[s] a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F. 3d at 555 (emphasis added as to "modest"). As discussed *supra*, Plaintiff has met this burden.

Defendants also dispute that Plaintiff and putative opt-in plaintiffs are similarly situated. (Def. Mem. at 15–17). With respect to subway operators who do not operate the "7" line, the Court agrees with Defendants that Plaintiff has not included sufficient evidence of a city-wide common policy or plan to deny train operators overtime. However, the Court finds that Plaintiff has shown that subway operators of the "7" line are similarly situated. Additionally, several of the cases cited in Defendants' memorandum of law support the Court's decision to certify a more limited class than requested. (Def. Mem. at 17 (citing *Anjum v. J.C. Penney Co. Inc.*, No. 13-CV-460 (RJD) (RER), 2015 WL 3603973 (E.D.N.Y. June 5, 2015) (approving collective action certification for sales associates in two stores but not all stores) and *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443 (E.D.N.Y. 2014) (certifying collective at three locations but not nationwide)).

Additionally, Defendants argue that Plaintiff and declarants are paid daily overtime when they work beyond eight hours in a day. (Def. Mem. at 17–19). Factual inquiries are, however, inappropriate at this stage in the litigation. *In Re Penthouse,* 2010 WL 4340255, at *4; *see Alves v. Affiliated Home Care of Putnam, Inc.*, No. 16 Civ. 1593 (KMK), 2017 WL 511836, at *4 (S.D.N.Y. Feb. 8, 2017) ("Defendants' competing factual assertions may not defeat Plaintiff's motion for conditional class certification."); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) ("[I]f the plaintiff's allegations are sufficient on their face to support

conditional certification, a defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions.").

Defendants also contend that individual inquiries are necessary to adjudicate any potential claim. (Def. Mem. at 19–22). This is inaccurate. If the Court determines that Defendants' policy violates the FLSA individual inquiries may be necessary to calculate damages, but are not relevant at this stage in the litigation. Lastly, Defendants request that before certification of any class, the Court should instead permit the parties to engage in limited discovery. (Def. Mem. at 22). Defendants previously raised this issue with the Court and the Court ruled that discovery from the putative opt-in plaintiffs was disallowed at this juncture. (ECF Order dated 11/05/2019). The Court declines to alter its earlier ruling on the matter.

## II.     Proposed Notice

Under the FLSA, district courts have the power to order that notice be given to potential members of a plaintiff class. *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 335–36 (2d Cir. 1978). Plaintiff submits a proposed notice and requests authorization to send the notice by mail to all subway operators who work or worked for Defendants in New York, Bronx, Queens, and Kings counties between January 25, 2016 and the present, as well as an order requiring Defendants to post the proposed notice and opt-in consent forms in their Dispatch Offices in the listed counties. (Pl. Mot.; Dkt. No. 35-10). Plaintiff suggests a sixty-day notice period. (Dkt. No. 36-1 "Pl. Mem." at 20). Plaintiff concedes that the Grand Central Shuttle subway operators should be excluded from the putative collective. (Dkt. No. 37 "Pl. Reply" at 10). Defendants argue that the statute of limitations period should be measured from the date of the Court's order on conditional certification and request two weeks to meet and confer on the notice, citing deficiencies in Plaintiff's notice. (Def. Mem. at 23–24).

### A. Statute of Limitations and Equitable Tolling

Defendants argue that Plaintiff failed to put forth evidence suggesting that Defendants willfully violated the FLSA and, as such, a statute of limitations period of two years prior to the order on conditional certification should apply. (Def. Mem. at 23). In fact, Plaintiff clearly argued that

6

Defendants' conduct was willful. (Compl. ¶¶ 44–45). "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 73–74 (E.D.N.Y. 20016) (quoting *Jie Zhang v. Wen Mei, Inc.*, No. 14-CV-1647 (JS) (SIL), 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015)). The Court finds that a notice period of three years is appropriate. *See* 29 U.S.C. § 255(a). While the limitations period for each putative plaintiff continues to run until they elect to opt-in to the action, 29 U.S.C. §. 256(b), some plaintiffs may be eligible for equitable tolling. *See Kemper v. Westbury Operating Corp.*, No. 12-CV-0895 (ADS) (ETB), 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012). It is therefore appropriate that, "[n]otices of collective action may be sent to prospective plaintiffs who worked for defendants from a date three years prior to the filing of the motion for collective action, rather than the date upon which notice is mailed." *Id.* After Court-ordered mediation failed, Plaintiff filed this motion on October 9, 2019. The Court finds that notice shall be sent to operators of the "7" line who worked for Defendants at any point during the three years preceding the date of the filing of said-motion.

B. <u>Contents of Notice</u>

Defendants contend that the notice should include four modifications: (1) defense counsel's contact information should be included on the notice; (2) a third-party administrator should send the notice to potential collective members; (3) the opt-in consent forms should be returned to the third-party administrator or filed with the Clerk of the Court instead of being returned to Plaintiff's counsel; (4) Plaintiff's request for collective telephone numbers should be denied; and (5) Plaintiff's request to post notice in the workplace should be denied. (Def. Mem. at 24–25).

Firstly, regarding the inclusion of defense counsel's contact information, "[c]ourts in this Circuit have generally concluded that such information is appropriate for inclusion in a notice of collective action." *Anjum*, 2015 WL 3603973, at *14 (quoting *Slamna v. API Rest. Corp.*, No. 12 Civ. 757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013)). Therefore, defense counsel's contact information should be added to the notice.

Second, Defendants request that a third-party administrator issue the notice to potential members of the collective and they offer to bear the costs of this administration. (Def. Mem. at 24). Plaintiff does not provide any specific objections to this request beyond a general statement

7

that no modifications to the notice are necessary beyond the removal of the Grand Central shuttle subway operators from the collective. (Pl. Reply at 10). Therefore, the Court grants this request. *See Lin v. Everyday Beauty Amore Inc.*, 2018 WL 6492741 (BMC), at *8 (E.D.N.Y. Dec. 10, 2018) (granting defendants' request for a third-party administrator because defendants would have to pay for the costs of plaintiff's counsel to issue notice in any fee-shifting application filed by plaintiffs; because plaintiffs did not explain the basis for objecting to defendants' request; and because courts in this district prefer to encourage individual plaintiffs to retain their own counsel). It therefore follows that the opt-in consent forms should be returned to the third-party administrator, not Plaintiff's counsel.

Defendants also ask that Plaintiff's request for telephone numbers be denied. (Def. Mem. at 25). Generally, it is proper for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members. *See Velasquez v. Digital Page Inc.*, No. 11-CV-3892 (LDW) (AKT), 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (collecting cases). Thus, the Court directs Defendants to provide Plaintiff with the contact information as requested.

Plaintiff's request that notice be posted in the Dispatch Office, is granted but only as to the Dispatch Office for the "7" line. Posting of notices in employee common areas is routine and Defendants have not demonstrated a sufficient reason why posting should not be allowed in this case. *See Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.") (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y.2011)).

The Court approves a sixty-day notice period for the putative plaintiffs to opt in. *See Cohan v. Columbia Sussex Mgmt., LLC,* No. 12-CV-3203 (JS) (AKT), 2013 WL 8367807, at *12 (E.D.N.Y. Sept. 19, 2013), *aff'd*, No. 12-CV-3203 (JS) (AKT), 2016 WL 1045532 (E.D.N.Y. Mar. 15, 2016) ("[A] 60-day notice period for potential plaintiffs is common practice under the FLSA."). Furthermore, following this Court's decision to limit the collective, the proposed notice should be modified so that it is addressed only to subway operators of the "7" line.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion is granted in part and denied in part. A collective action of a limited class is certified and proposed notice is approved with modification. Within fourteen days of this Order, Defendants are directed to retain a mutually agreed upon a third-party administrator for the purpose of issuing the notice and to provide Plaintiff with the requested contact information.

SO ORDERED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: March 26, 2020
Brooklyn, NY