UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 19-CV-0516 (PKC) (RER)
———————————

JOHN FINNIGAN,

Plaintiff,

VERSUS

METROPOLITAN TRANSIT AUTHORITY AND
NEW YORK CITY TRANSIT AUTHORITY,

Defendants.

———————————

**MEMORANDUM & ORDER**

December 2, 2021
———————————

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff John Finnigan ("Finnigan" or "Plaintiff") brings this action individually and on behalf of all others similarly situated against defendants Metropolitan Transportation Authority and the New York City Transit Authority (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (ECF No. 1 ("Compl.")). Currently before the Court is Defendants' Motion to Strike Opt-in Plaintiffs Kenneth Chow, Rayshawn Stephens, James Rabel, Troy Owens, Sr., Gilbert Richards, Gilbert J. Boyd ("Boyd"), Vasilios Christakos, Seanta E. Logan ("Logan"), Jose B. Lozano ("Lozano"), Alan Sira, Michael Bennet

("Bennet"), Nycole Webb, Terry Russell, and Carl Everette (collectively "Disputed Plaintiffs"). (ECF No. 86 ("Def's Mot.")).[1] For the reasons set forth herein, Defendants' motion is DENIED.

## BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history of this case.

On March 26, 2020, the Court granted Plaintiff's motion for conditional certification of an FLSA collective action pursuant to 29 U.S.C. §216(b), and authorized notice to be issued to subway operators or former subway operators of the "7" train who worked for Defendants at any point during the three years preceding the filing of the motion for conditional certification. (ECF No. 40 ("Conditional Certification Order") at 1).

According to Defendants, they distributed collective action notices to "all operators who were assigned to the '7' line at any time during the three years preceding the filing of the 216(b) Motion" using a third-party administrator. (ECF No. 87 ("Def.'s Mem.") at 2). However, Defendants provided the third-party administrator with "the names of only those train operators who 'picked' the '7' line during the limitations period" claiming only those train operators were similarly situated to Finnigan, who had "picked" his assignment on the "7" line. (*Id*. (emphasis original)).[2] Additional plaintiffs opted into the litigation during the notice period, including the Disputed Plaintiffs. (Def's Mem. at 2).

---

[1] Defendants' motion was referred to the undersigned for decision. (ECF entry dated April 26, 2021).

[2] Subway operators can choose to work certain train assignments and schedules based on their "pick," which can encompass either a specific train line or a subgroup of train lines, for example, "Subdivision A," which encompasses all numbered train lines. (Def.'s Mem. at 3–4). A "pick" for a single line typically involves five shifts on that line in each work week, while a "pick" for a subdivision might involve work on several lines each week. (*Id.* at 3). The "pick" system is based on seniority and operators typically make a "pick" for their desired schedule and assignment twice per year. (ECF No. 88 ("Walcott Dep.") ¶ 4).

2

According to Defendants, some of the plaintiffs who have opted in operated trains on the "7" line because they had "picked" that line, while other plaintiffs had "picked" assignments on subdivisions, such as "Relief Personnel" or "Extras," that saw them operate any one of several different trains, including the "7". (*Id*. at 3). Defendants argue that only operators who "picked" the "7" train are similarly situated to Finnigan (*id*. at 2), while Plaintiffs argue that all operators of the "7" line are similarly situated regardless of whether they "picked" that assignment or not. (ECF No. 89 ("Pl.'s Opp'n.") at 2).

On July 2, 2021, Defendant moved to strike 14 Disputed Plaintiffs, arguing that they did not "pick" the "7" train or did not work more than forty hours per week on the "7" train, and therefore are not similarly situated to Finnigan. (Def.'s Mem. at 1, 3).

## DISCUSSION

### I. The FLSA Collective Action Certification Process

Section 216(b) of the FLSA permits the court to consider an employee's claims on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). The process of determining whether to certify a collective action is a two-step inquiry. *Finnigan v. Metro. Transp. Auth.*, No. 19-CV-00516 (PKC) (RER), 2020 U.S. Dist. LEXIS 52904, at *4 (E.D.N.Y. Mar. 26, 2020) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)). First, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiff[] with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. "Importantly, at this first stage, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." *In re Penthouse Exec. Club Comp. Litig.*, 2010 U.S. Dist. LEXIS 114743, at *7 (S.D.N.Y. Oct. 26, 2010) (internal quotations omitted) (collecting cases).

3

Second, "*[a]fter discovery is complete*, the court will then evaluate the full record before it to determine whether the opt-in plaintiffs are, in fact, similarly situated." *Hernandez v. NHR Human Res., LLC*, No. 20-CV-3109 (PGG) (DF), 2021 U.S. Dist. LEXIS 115242, at *16 (S.D.N.Y. June 18, 2021) (internal quotations omitted) (emphasis added). At that time, Defendants may move to decertify the collective. *Finnigan*, 2020 U.S. Dist. LEXIS 52904, at *5. Upon a motion for decertification, the Court will "apply increased scrutiny to determine, based on the developed record, whether the additional plaintiffs are, in fact, similarly situated." *In re Penthouse*, 2010 U.S. Dist. LEXIS 114743, at *8. "If they are not, the [collective] can be decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without prejudice." *Hernandez*, 2021 U.S. Dist. LEXIS 115242, at *16-17 (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007)).

Here, the litigation has not yet reached the second stage of the process, and it would be premature for the Court to strike the Disputed Plaintiffs without a more complete record. The parties agree that discovery is far from complete. (ECF No. 93 "October 26, 2021 Status Report"). Additionally, there are unresolved factual disputes concerning the Disputed Plaintiffs. Defendants argue that Disputed Plaintiffs Boyd, Logan, Lozano, and Bennet did not work on the "7" line and that the other ten Disputed Plaintiffs do not have viable overtime claims because they did not "pick" the "7" line and did not necessarily work on the "7" line for forty hours per week. (Def.'s Mem. at 3). Plaintiffs dispute those characterizations, arguing that all Disputed Plaintiffs are "actually party plaintiffs who have party status and who also have a right to be present in court to advance their own claims." (ECF No. 82 "Pl.'s Response Letter").[3] Defendants cite no case law

---

[3] While Defendants offer some support for their claim that Boyd, Logan, Lozano, and Bennet did not work on the "7" line (Walcott Dep. ¶ 21), discovery is far from complete and it would be premature to strike these opt-in plaintiffs at this time.

4

that supports their position that the Disputed Plaintiffs should be stricken at this point; however, there is ample case law stating that the appropriate time to strike opt-in plaintiffs from an FLSA collective is upon a motion to decertify the collective after discovery is completed. *E.g., Cabrera v. Stephens*, No. 16-CV-3234 (ADS) (SIL), 2017 U.S. Dist. LEXIS 160044, at *11 (E.D.N.Y. Sep. 28, 2017) (quoting *Bijoux v. Amerigroup New York, LLC*, 14-CV-3891, 2015 U.S. Dist. LEXIS 122669, 2015 WL 5444944, at *2 (E.D.N.Y. Sept.15, 2015) ("At the second step, after discovery, the court will determine whether the plaintiffs who opted-in are indeed similarly situated to the named plaintiff[s]; if they are not, the collective action may be decertified.")); *Millin v. Brooklyn Born Chocolate*, LLC, No. 19-CV-3346 (ENV) (RER), 2020 U.S. Dist. LEXIS 79950, at *3 (E.D.N.Y. May 6, 2020).

As discovery is ongoing and Defendants have not made a motion for decertification, it is inappropriate for the Court to "resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations" at this time and Defendant's motion must be denied. *In re Penthouse*, 2010 U.S. Dist. LEXIS 114743, at *7, 12 (denying a motion to strike potential plaintiffs at the first stage of the certification process because "defendants' argument amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage."). Once discovery is complete, any opt-in plaintiffs who are not similarly situated to Finnigan can be stricken upon a motion for decertification based on a full record. *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 118 (E.D.N.Y. 2020) (quoting *Mason v. Lumber Liquidators, Inc.,* No. 17-CV-4780 (MKB) (RLM), 2019 U.S. Dist. LEXIS 141026, at *12 (E.D.N.Y. Aug. 19, 2019)) ("[T]he purpose of the first step of conditional certification is to provide notice to potential plaintiffs, and it is not until the second step, sometimes referred to as the 'decertification stage,' that a court will scrutinize membership in the class.").

II. **The Scope of the FLSA Collective**

Defendants have asked the Court to clarify its Conditional Certification Order "so that the Parties may properly identify the appropriate members of the collective and proceed with discovery." (ECF No. 90 "Def.'s Reply" at 1). Defendants argue that only those operators who "picked" the "7" line should be included in the collective because only those operators are similarly situated to Finnigan. (*Id.*; Def.'s Mem. at 3). Plaintiffs argue that if Disputed Plaintiffs "worked on the '7' line at any point during the relevant time period, then they are properly in this collective action and entitled to participate in discovery to advance their claims." (Pl.'s Opp'n. at 5).

The Court's Order clearly states that "Plaintiff is similarly situated to other operators of the '7' line." (Conditional Certification Order at 5). It authorized notice to "subway operators or former subway operators of the '7' train for a period of time dating back three years from the filing of Plaintiff's motion." (*Id.* at 1). At no point does the Order indicate that the collective should only include operators who "picked" the "7" line or that only by "picking" the "7" line could potential plaintiffs be similarly situated to Finnigan. Defendant is incorrect to assume that an operator's "pick" has any bearing on whether they are properly members of this FLSA collective.

If Plaintiff's allegations are true and working on the "7" line added extra time to every shift, it is plausible that working even one shift on the "7" line could add an additional ten to fifteen minutes of uncompensated time to a work week, causing the time worked for the week to be more than forty hours, giving rise to an FLSA claim. (Compl. at 5). Once discovery is complete and a fuller record is established, time sheets can be used to show whether work on the "7" line pushed any of the Disputed Plaintiffs into working more than forty hours in a given week; if so, they will be proper members of the collective. If a fuller record shows that a Disputed Plaintiffs' work on the "7" line did not push

6

their hours over forty and generate unpaid overtime in any week, then they can be stricken from the collective action upon a motion for decertification.

## CONCLUSION

For the reasons set forth above, Defendants' motion is denied.

   /s/ Ramon E. Reyes, Jr.

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: December 2, 2021
      Brooklyn, NY